## STATE v. T. L. BROWN, *Judge*.

### No. A-1789.   Opinion Filed September 3, 1912.

#### (126 Pac. 245.)

1.   **JUDGES**—Constitutional Law—Prejudice — Disqualification.   (a) A defendant in a criminal case has no right to insist that he be tried before a judge prejudiced in his favor, or before any particular judge; and no rights of a defendant are invalidated by the substitution of a judge impartial as between himself and the state.

     (b)   The Legislature has the power to mark out the means, manner, and time for the determination of the question as to whether a judge is disqualified in any given case on account of prejudice.

     (c)   The fact that the prejudice of a trial judge is not mentioned in the statutes as a ground for disqualification is immaterial.   Such disqualification rests upon constitutional grounds, and cannot be excluded by the provisions of the statute.   The statute merely provides the means by which the disqualification of a judge upon any ground may be secured.

     (d)   The statute gives all parties to a suit equal right to object to such action being tried before a prejudiced judge, and in criminal cases this right extends to the state as well as to the defendant.

2.   **MANDAMUS**—Appeal by State—Disqualification of Judge.   (a) Section 6947, Comp. Laws 1909, in express terms gives the state the right to reserve any question arising in a criminal cause; and when said cause is determined the state can bring such question up on appeal to this court for review.

     (b)   The Criminal Court of Appeals has the power, and it is its duty to consider a petition for a writ of mandamus upon motion of the state to disqualify a judge from trying a criminal case.

3.   **PRISONS**—Disqualification of Judge—Prejudice—Liberties.   (a) For facts that would not authorize this court to issue a writ of mandamus upon motion of the state disqualifying a judge from trying a criminal case, see opinion.

(b)   A judge should never be a partisan.   He should treat both sides with equal fairness and impartiality.   Whenever a judge becomes a partisan, his usefulness on the bench is at an end.

(c)   The law provides county jails as the places of confinement of prisoners before trial, and sheriffs have no right to keep them anywhere else, or to allow them to be at liberty, except on order of a court of competent jurisdiction.   Sheriffs have no right to have pets or favorites, or extend any liberties or privileges to one prisoner which the law does not extend to all prisoners.   It is the duty of trial judges and county attorneys in this state to see that the law in this respect is obeyed.

(Syllabus by the Court.)

Mandamus by the State against T. L. Brown.   Writ denied.

A petition for a writ of mandamus was filed in this court by the county attorney of Nowata county, which, in substance and effect, alleges that an action is now pending in the district court of Nowata county, wherein the State of Oklahoma is plaintiff and H. O. Jeffries is defendant, in which said Jeffries is charged with the crime of murder, and that the respondent, Hon. T. L. Brown, is the duly elected, qualified, and acting judge of said district court.   The petition further alleges in general terms that the state cannot have a fair and impartial trial of said case before said judge, because of the bias and prejudice of said judge against the plaintiff and in favor of the defendant therein, and also because of the hostility of said judge toward the county attorney of said county; and said petition prays that this court issue a writ of mandamus requiring said judge to certify his disqualification to preside at the trial of said cause.   The petition further alleges that on the 28th day of June, 1912, the county attorney of said county filed in said cause a written application setting forth that said judge was disqualified to sit in said cause and requesting him to so certify, and that said judge had declined and refused to so certify his disqualification to preside at the trial of said cause.

The special grounds relied upon to sustain the charge of prejudice are stated as follows:

"(1)   That the said T. L. Brown, judge of the district court in and for Nowata county has shown himself biased against the state and in favor of the defendant in this, to wit:   (a)   That on the 23rd day of April, 1912, on the day that the said H. O. Jef-

fries was arrested, the said T. L. Brown, judge of the district court aforesaid, did advise and inform the sheriff of Nowata county to the effect that said H. O. Jeffries, although he was charged with the murder of one Irene Goheen, could be allowed to run at large on the streets of Nowata and other places, if the said H. O. Jeffries would pay for some one to guard him while he was at large. (b) That said Jeffries was, on the advice of the said T. L. Brown, judge of the district court aforesaid, allowed to run at large, and did spend the day on the streets and in the stores and offices of the town, and the nights at his home on South Hickory street in the city of Nowata.

"(2) That the said T. L. Brown, judge of the district court, shows his bias and prejudice in behalf of said defendant, in words and acts as follows: (a) That on the —————— day of June, 1912, and immediately preceding the hearing on the petition for writ of *habeas corpus*, in which the said H. O. Jeffries was seeking to obtain bail, that the said T. L. Brown, judge of the district court aforesaid, did at various and sundry times have private and secret consultations relative to and pertaining to the merits of the case of State of Oklahoma v. H. O. Jeffries; one of said consultations being had and held in the private office of Judge Bert Van Leuven, attorney for defendant, and Detective H. F. Tillotson, private detective and adviser of the defendant, being present. That in this conversation aforesaid, occurring in the office of the said Judge Bert Van Leuven on Cherokee street, and next door east of the Denton building, the said Judge T. L. Brown, judge of the district court aforesaid, did, with the attorney and the detective aforesaid, discuss the merits of the case of the State of Oklahoma v. H. O. Jeffries and the advisability of releasing the said H. O. Jeffries on bond.

"(3.) That the said T. L. Brown did further show his bias and prejudice in favor of the defendant, and did, on or about the 13th day of June, 1912, proceed to the county jail, where the said H. O. Jeffries, defendant in the above-entitled cause, was incarcerated, and did there in said jail hold an extended and secret consultation with the defendant, in which the guilt or innocence of the said defendant was discussed, the probability of the Criminal Court of Appeals refusing to give the defendant bond, the intention of the said T. L. Brown, judge of the district court, in case that the said defendant did not get bond at the hands of the said Criminal Court of Appeals of the state of Oklahoma, that the said T. L. Brown would see that the said H. O. Jeffries, defendant aforesaid, should have a square deal, and that he, the said T. L. Brown, judge of the district court afore-

said, would see that the said H. O. Jeffries would be released on bond.

"(4) That the said T. L. Brown is also biased and prejudiced in behalf of the defendant, because of his extreme dislike and hatred of and towards the elected and acting county attorney of Nowata county.

"(5) That the district judge, T. L. Brown, has shown his prejudice and extreme hatred towards W. V. Thraves, county attorney of Nowata county, in this, to wit: That on the 15th day of June, 1912, the said T. L. Brown, judge of the district court aforesaid, did write a letter to the Attorney General of the state of Oklahoma, at Oklahoma City, Oklahoma, stating to the effect that the said W. V. Thraves, county attorney as aforesaid, was not properly conducting and prosecuting the case of State of Oklahoma v. H. O. Jeffries, and that he desired the Attorney General to appoint an assistant to come to the county of Nowata, and, in conjunction with the county attorney's office, that he, the said appointee of the said Attorney General aforesaid, should undertake to find and prosecute the real murderer of Irene Goheen, deceased. That the said application is uncalled for, unnecessary, and absolutely useless, being prompted by prejudice, bias, and malice as aforesaid on the part of the district judge aforesaid.

"(6) That the said district judge, T. L. Brown, is disqualified, for the reason that he has at various times expressed his opinion as to the guilt or innocence of the defendant. That it is true that the said T. L. Brown, district judge as aforesaid, has expressed the above opinion that the said H. O. Jeffries was guilty of the murder, and at other times that the said H. O. Jeffries should be released and would be released on bond pending his trial in the district court. That subsequent to the denial by said judge of your petitioner's application as aforesaid, your petitioner learned of the following statements made by said judge, disclosing his bias and prejudice against the plaintiff and in favor of the defendant in said cause, to wit: That said judge, discussing said cause, stated that he would try said case. 'So help me God,' the state couldn't take him off the bench, and that the defense didn't want to, and that he would not hang Jefferies, no matter what the verdict of the jury was, unless he knew positively of his own knowledge that said Jefferies was guilty."

To this petition respondent answers as follows:

"Your respondent denies that an impartial trial cannot be had in said action, and denies that he has any bias in favor of the defendant or prejudice against the state, and denies any hostility

towards W. V. Thraves, the county attorney, and denies that he has ever exhibited in acts or words, or in either manner, any prejudice, bias, or hostility towards him. Your respondent admits that on the 28th day of June, 1912, there was filed in said court an application to disqualify said judge, and admits that your respondent denied the motion. Said denial being based on the following: (1) Because the state is not authorized under the law to file an application to disqualify a judge. (2) Because there was no sufficient showing upon the part of the state. (3) Because your respondent had not at that time, or any other time, any bias in favor of the defendant or prejudice against the state, and because your respondent was not disqualified upon any ground to conduct said trial fairly and impartially. (5) Your respondent denies that at the time of the arrest of the said H. O. Jeffries he advised and informed the sheriff of Nowata county to the effect that said H. O. Jeffries could be allowed to run at large, and denies that he had any conversation whatever with the sheriff with regard to said matter; but your respondent avers that he was in Nowata on the day that H. O. Jeffries was arrested, and that he was informed by the county attorney, W. V. Thraves, that the said H. O. Jeffries was running at large in the custody of a guard, and the said W. V. Thraves at that time insisted and demanded that your respondent take some action toward placing the said H. O. Jeffries in jail, and that your respondent, in pursuance of said request and remonstrance on the part of W. V. Thraves, did go to the justice of the peace before whom the warrant was issued, and instructed him that he must follow the statute relative to the custody of prisoners charged with offenses of like character with which the defendant was charged.

"(3)   Your respondent denies that he ever had any private consultation with the defendant, H. O. Jeffries, and denies that he ever, either privately, secretly, or publicly, had any conversation relative to and pertaining to the merits of the case wherein he was defendant, and denies that he ever had any conversation of any character with the defendant in the presence of Bert Van Leuven and H. F. Tillotson. Your respondent admits that he did have a conversation with H. O. Jeffries while he was incarcerated in jail, but denies that the same was extended, or in secret, and denies that the guilt or innocence of said defendant was discussed, or the probability of the Criminal Court of Appeals refusing to give defendant bond, and denies that he ever, by act or word, in any manner, indicated that he would do anything in behalf of the defendant.

"(4) Your respondent admits that he said that he would give H. O. Jeffries a square deal, or words to that effect, and respondent further admits that he has made the same statement with regard to any criminal cases pending before him, and that by said expression he meant only that right and justice should be done.

"(5) Your respondent further avers that the conversation with H. O. Jeffries aforesaid was had at the request of the said H. O. Jeffries; that the said H. O. Jeffries requested that your respondent visit him in the jail, without any mention or suggestion of his case. Your respondent believes, and therefore states the fact to be, that the jailer of Nowata county, Oklahoma, was the party who informed your respondent that H. O. Jeffries desired to see him.

"(6) Your respondent denies extreme dislike and hatred of and toward W. V. Thraves, and alleges that at all times in all trials before your respondent the said W. V. Thraves has received at the hands of your respondent justice and courtesy.

"(7) Your respondent admits that he did write a letter to the Attorney General of the state of Oklahoma with regard to the Goheen murder, a carbon copy of said letter being hereto attached, marked 'Exhibit A,' and made a part of this instrument.

"(8) Your respondent denies that he has ever at any time held any bias in favor of the defendant, or prejudice against the state, and has not at this time any such bias or prejudice, and your respondent knows of no reason why he is disqualified in said action in any manner."

*W. V. Thraves,* Co. Atty., *W. A. Sipe,* and *A. Buchanan,* for the State.

*J. F. Lawrence,* for respondent.

FURMAN, P. J. (after stating the facts as above). First. Can the state in a criminal case disqualify a trial judge upon the ground that he is so biased in favor of the defendant that the state cannot secure a fair and impartial trial of said cause before said judge? It is contended by the state and conceded by the respondent that a defendant in a criminal action has no right to insist that he be tried before a judge prejudiced in his favor, or before any particular judge, and that no rights of a defendant are invalidated by the substitution of a judge impartial as between him and the

state. We think this states a sound principle of law, which is in harmony with the Constitution and statutes of this state. Our Constitution is as follows:

"The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay or prejudice." (Williams' Ann. Const. sec. 14, p. 10.)

There can be no question but that the Legislature has the power to mark out the means, manner, and time as to the determination whether prejudice exists in any given case. See footnotes to Williams' Ann. Const. sec. 14, p. 10.

Our statute with reference to the disqualification of trial judges is as follows:

"No judge of any court of record shall sit in any cause or proceeding in which he may be interested, or in the result of which he may be interested or related to any party to said cause within the fourth degree of consanguinity or affinity, or which he has been of counsel for either side, or in which is called in question the validity of any judgment or proceeding in which he was counsel or interested, or the validity of any instrument or paper prepared or signed by him as counsel or attorney, without the consent of the parties to said action entered of record: Provided, that the disqualifications herein imposed shall not exclude the disqualifications at common law." (Section 2012, Comp. Laws 1909.)

"In any cause, civil or criminal, pending in any court of record, in this state, if the presiding judge for any legal cause, shall be incompetent or disqualified to try, hear, or render judgment in such cause, the parties or their attorneys of record, if it be a civil cause, or the prosecuting officer and the defendant or defendants or their attorneys of record, if it be a criminal cause, may agree upon some member of the bar of the district who is not disqualified, if it be in the district court, or of the county, if it be in the county or superior court, and if in any other court of record within its jurisdiction, to act as a special judge to hear and decide and render judgment in the same manner and to the same effect as such disqualified judge could have rendered but for his disqualification." (Section 2013, Comp. Laws 1909.)

The fact that the prejudice of a trial judge is not mentioned in either of these sections as a ground for disqualification is im-

material, because it is embodied in the Constitution itself. We are required to construe our statutes liberally and in connection with the Constitution. See authorities cited in Williams' Ann. Const. sec. 14, p. 10. As is well said in the brief of counsel for petitioner:

"This provision of the Constitution was held by this court in *Ex parte Hudson,* 3 Okla. Cr. 393, 106 Pac. 540, 107 Pac. 735, to guarantee to a defendant in a criminal action a trial before an unprejudiced judge, and to be self-executing, so that he could not be deprived of such right by neglect of the Legislature to provide a remedy for its enforcement. So, in the case cited, it was held that, bias and prejudice of the judge against the defendant having been shown, mandamus would lie from this court to such judge commanding him to certify to his disqualification. There is nothing in the language or spirit of this constitutional guaranty limiting it to either party to an action, or excluding the state from the same right to a trial before an unprejudiced judge which it accords the defendant in a criminal action. It is a guaranty of the administration to the people of justice without prejudice, not only in those actions in which they seek to enforce their private rights and individual rights, but also in those brought by them for the enforcement of their associate and collective rights as a body politic. The latter are just as important to them as the former, and so intimately correlated with them that the violation of the public right usually involves the violation of a private right, which can be adequately protected only by due enforcement of a public right. For example, the commission of a murder, which is the crime involved in this case, is the violation of a public right—that is, of the peace and dignity of the state—and at the same time a violation of the most sacred private right, namely, the right of a personal security. This private right could not be adequately protected by a private action against the murderer, which would only result in a money judgment, and therefore have but little deterrent effect on persons murderously inclined. The effective preventative cause, and safeguard of personal security, is simply the severer penalty inflicted in a public action by the state; and such prevention is the prime purpose of criminal punishment. This is illustrated in Rhode Island, where the Legislature, after abolishing capital punishment, found it necessary to restore it, owing to the marked increase in murders. As the private right of personal security can therefore be protected only by actions to vindicate the public right, it is of as much importance to the people as that justice should be adminis-

tered without prejudice to them in their purely private individual actions. Both are included in the constitutional guaranty. So, in an action by the people to enforce their collective rights as a state, in a prosecution for murder, they have the same right as the defendant to a trial before an unprejudiced judge, which, under the self-executing provision of the constitutional guaranty, the courts are bound to enforce."

We are of the opinion that the state has just as much right to have its cases tried before an unprejudiced judge as a defendant has, and that the state can object to the trial of any of its cases before a disqualified judge.

Second. The next question is as to whether or not this court has the authority, upon a petition of the state, to issue a writ of mandamus disqualifying a judge from trying a criminal case. Section 187 of Williams' Ann. Const. is as follows:

"The appellate jurisdiction of the Supreme Court shall be coextensive with the state, and shall extend to all civil cases at law and in equity, and to all criminal cases until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law."

Exclusive jurisdiction cannot be divided, but must be confined solely and entirely to the court upon which it is conferred. Exclusive appellate jurisdiction of criminal cases means that this court alone has the power to review and correct any and all errors committed in criminal cases by the trial court. If any other court shares such power with this court, our jurisdiction would not be exclusive, and it would necessarily result in conflicts and confusion, and would thereby destroy the unified and harmonious enforcement of criminal law in Oklahoma. It requires no argument to show that this view is just and correct. It is sustained by the Supreme Court of the state in the case of *State ex rel. Ikard v. Russell,* 33 Okla. 141, 124 Pac. 1092, and the same doctrine was reaffirmed in the case of *Ex parte Anderson,* 33 Okla. 216, 124 Pac. 980. See, also, *Ex parte Riggert,* 33 Okla. 303, 125 Pac. 485.

Our statute on this subject is as follows:

"The Criminal Court of Appeals shall have exclusive appellate jurisdiction in all criminal cases appealed from county and district courts in this state, and such other courts as may be es-

tablished by law. The appellate and original jurisdiction of the Criminal Court of Appeals shall be invoked in the manner prescribed by law." (Section 1916, Comp. Laws 1909.)

"Said court and judges thereof shall have the power to issue writs of *habeas corpus,* and under such regulations as may be prescribed by law, issue such writs as may be necessary to exercise its jurisdiction, and may prescribe and promulgate such rules for the government of said court as it may deem necessary. (Section 1918, Comp. Laws 1909.)

"Said court shall have power, upon affidavit or otherwise, to ascertain such matters of facts as may be necessary to the exercise of its jurisdiction." (Section 1919, Comp. Laws 1909.)

Section 2016, Comp. Laws 1909, is as follows:

"Any party to any cause pending in a court of record may in term time or in vacation file a written application with the clerk of the court, setting forth the grounds or facts upon which the claim is made that the judge is disqualified, and request him to so certify, after reasonable notice to the other side, same to be presented to such judge, and upon his failure so to do within three days before said cause is set for trial, application may be made to the proper tribunal for mandamus requiring him so to do."

Section 6947, Comp. Laws 1909, is as follows:

"Appeals to the Supreme Court (Criminal Court of Appeals) may be taken by the state in the following cases and no other: 1. Upon judgment for the defendant on quashing or setting aside an indictment or information. 2. Upon an order of the court arresting the judgment. 3. Upon a question reserved by the state."

The right of the state to take an appeal in a criminal case has been twice sustained by this court. See *State v. Clifton,* 2 Okla. Cr. 189, 100 Pac. 1124, and *State v. Pollock,* 5 Okla. Cr. 26, 113 Pac. 207. It is therefore not necessary to discuss this question again. The statute in express terms gives the state the right to reserve any question arising in a criminal case, and when said cause is determined the state can bring such question up by appeal to this court for review. If a motion to disqualify a judge is made by the state and denied by the trial judge, and the defendant should be tried and acquitted, and if the state has reserved such question for appeal, it could be brought up and passed upon by this court, and the questions of law therein involved could be

settled. The fact that the defendant may have been acquitted and could not be tried again for the same offense would not interfere with the right of the state to appeal and have the question so reserved settled. Any other construction would render the third paragraph of section 6947 meaningless and nugatory. We therefore hold that this court has the power and that it is its duty to consider a petition for a writ of mandamus upon motion of the state to disqualify a judge from trying a criminal case.

Third. When this case was tried, a great deal of evidence. was received, without objection from either party, which, under the rules of law, was not admissible. Without deciding as to whether or not prejudice against an attorney would legally disqualify a judge from trying a case in which such attorney was employed, we do not think that such a showing has been made as to authorize us to disqualify respondent upon this ground. The strongest evidence on this question is a newspaper publication, which contains some indiscreet remarks alleged to have been made by counsel for defendant Jeffries with reference to the feeling of respondent toward the county attorney. This attorney was a witness upon this hearing, and did not deny the publication attributed to him. We do not think respondent is in any manner responsible for this publication, or for these remarks, and we trust that experience will teach the attorney who is reported to have used this language the impropriety of trying his cases in newspapers. Such publications invariably do more harm than good to the person in whose interests they are made. In this case they have subjected the judge to criticism and have not at all benefited the defendant Jeffries, because they were calculated to and did create the impression that Jeffries and his said attorney were largely depending upon the hostility of the trial judge toward the county attorney. This was unjust to and injured a number of persons, one of whom was the defendant Jeffries himself. Lawyers should exercise some discretion about what they say, and especially about what they put in print. We think that respondent acted indiscreetly in visiting defendant Jeffries in the county jail, yet we also think that this arose from

goodness of heart upon his part rather than from any desire to favor the defendant Jeffries.

There is one circumstance which to our minds entirely negatives and overthrows the idea that respondent was colluding with counsel for defendant Jeffries to favor him in the trial of his case. Respondent had the power to admit Jeffries to bail, yet when a petition for *habeas corpus* was presented to him, and after he had considered the same, he suggested to counsel for Jeffries that the petition be withdrawn and presented to this court for action. If there was any collusion on the part of respondent and Jeffries and his attorney, as the publication made by the attorney of Jeffries would indicate, and if respondent desired to favor Jeffries, there was nothing to have kept him from admitting Jeffries to bail. It is much more difficult for lawyers to understand judges than it is for judges to understand lawyers, because all judges have acted in both capacities. No man can be a good trial lawyer unless he becomes so imbued with the justice of his case as to make him a partisan. We see this illustrated in the person of the county attorney of Nowata county. We commend the ability, zeal, and courage with which he prosecutes violators of law in his county, and under the testimony in this case we can well see how he may have misconstrued and misunderstood the conduct of the trial judge. A judge should never be a partisan. He should endeavor to treat both sides with equal fairness and impartiality. Whenever a judge becomes a partisan, his usefulness on the bench is at an end.

From a careful consideration of the entire record in this case, we have reached the conclusion that the county attorney and the respondent have both acted in good faith, and that each one has been animated alone by a conscientious desire to do his duty, and that the trouble existing between them grows out of their different temperaments and viewpoints. The evidence shows that the defendant Jeffries has been granted a great many privileges by the sheriff of Nowata county, not authorized by law or by order of respondent. We take advantage of this occasion to say to the sheriffs of Oklahoma that the law has provided county jails as the places of confinement for prisoners committed

to their custody, and that they have no right to keep them anywhere else, or allow them to be at liberty, except on special order of a court of competent jurisdiction. Any sheriff who does not obey the law in this respect should be removed from office, and should also be visited with severe penalties. The man who is not willing to obey the law should not hold the office of sheriff, or any other public office. He has no right to have pets or favorites, or extend any liberties or privileges to one prisoner which the law does not extend to all prisoners; and we suggest to the various trial judges and county attorneys of Oklahoma that they admonish their several sheriffs as to this matter, and, if they find any carelessness of this sort, that they take such action as will secure respect for and obedience to law, for in this manner only can the interests of society be protected.

Considering the evidence in this case as a whole, we do not think that we would be justified in holding that respondent was disqualified to sit in the trial of this case. The writ of mandamus is therefore denied.

ARMSTRONG and DOYLE, JJ., concur.