Hugh **BRYSON**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. Misc. 464.

United States Court of Appeals
Ninth Circuit.

June 20, 1955.

See also D.C., 16 F.R.D. 477.

Gladstein, Andersen, Leonard & Sibbett, Richard Gladstein, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Richard H. Foster, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

DENMAN, Chief Judge.

Bryson, appellant, moves for a reduction of bail pending appeal from the amount of $50,000 allowed by United States District Judge Mathes acting under Rule 46(a) (2) and (c) of the Federal Rules of Criminal Procedure, 18 U.S.C.

The question before us is whether Judge Mathes abused his discretion in fixing the bail at this high amount. In determining that question we are controlled, as was Judge Mathes, by the provisions of Rule 46, the pertinent portions of which are:

> "(a) (2) Upon Review. Bail may be allowed pending appeal or certiorari only if it appears that the case involves a substantial question which should be determined by the appellate court. Bail may be allowed by the trial judge or by the appellate court or by any judge thereof or by the circuit justice.[1]

\* \* \* \* \* \*

---

1. Since we are considering allowing release on bail we must determine the existence of a substantial question.

"(c) Amount. If the defendant is admitted to bail, the amount thereof shall be such as in the judgment of the commissioner or court or judge or justice will insure the presence of the defendant, having regard to the nature and circumstances of the offense charged, the weight of the evidence against him, the financial ability of the defendant to give bail and the character of the defendant."

(A) *The appeal presents a substantial question.*

■ The Chief Judge is of the view that the indictment charged in count one that Bryson violated 18 U.S.C. § 1001 in filing on April 26, 1951 an affidavit required by Section 9(h) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 159(h), stating he then and there was not a member of *the* Communist party, whereas he was in fact a member of *the* Communist party. On this charge of membership in some unnamed one of the Communist parties he was acquitted.

Count two charged violation of the above acts by filing an affidavit on April 26, 1951 that he was not an "affiliate of *the* Communist party," whereas he then was an "affiliate of the Communist party." On this last charge he was convicted. It is obvious that the appeal may present several substantial questions. One is to the validity of the indictment with reference to the phrase "*the* Communist party" without the statement of which one of the various Communist parties, such as the Communist parties in the several states and the Communist party of the United States, was intended. Does such a phrase sufficiently inform one when making the affidavit of the character of the offense and thus comply with the requirement of precision required in drafting a criminal statute?

A Communist party well may seek to establish Marxian socialism, without seeking to overthrow the Government by force, as did the Russian Mensheviks, the second largest party in Russia at the time of the revolution. See American Bar Association circulated Statement on Communism, pages 10 and 18.

Since there may be various Communist parties some of whom do not seek the overthrow of Government by force, must not 9(h) be construed to require that the affidavit deny membership or affiliation in a Communist party "*and* that he does not believe in or teach . . . the overthrow of the United States Government by any illegal or unconstitutional methods", the latter phrase identifying the kind of affiliation in the party which he occupied? Does he violate the Act if his affidavit is not false both as to affiliation and belief?

We are all agreed on the question as to what the words "affiliated with" mean. The definitions of Webster's dictionary of these words are "Intransitive: 1. To connect or associate:—followed by *with*, as, they affiliate with no party. 2. To be friendly, to fraternize. U. S."

If "affiliate with" means "connect with" what are the kinds of connections intended by the statute, which a person must have in mind when he makes his affidavit? Did Congress mean that the affiant, when he made his affidavit, was to consider that he was falsely swearing to lack of affiliation, if he was merely friendly to the Communist party?

Further, assuming that the phrase "affiliated with" makes the statute one that is enforceable, there arises the question of the instructions given by the court as to the nature of affiliation, which we understood at the hearing on the motion was agreed to present a substantial question.

The judge himself certifies that there is a substantial question and our required determination agrees with his.

B. *The requirement of a bond for $50,000 would keep the appellant in jail for many months, perhaps for more than a year.*

■ The uncontradicted evidence before us is to the effect that Bryson has not the means to raise and cannot raise through his friends a bond for $50,000. Though these facts were before Judge Mathes he nevertheless required

that amount and this despite the provision of Rule 46 that he should consider "the financial ability of the defendant to give bail."

This means that unless the bail be reduced Bryson will be confined in jail for the period of his appeal in this court and for the period in which certiorari is sought and granted or denied and if granted until the Supreme Court decision. Since this is a case of first instance and also involves a number of substantial questions, it is quite likely that certiorari may be granted. If it be granted and any of the substantial questions are resolved in favor of Bryson, he will have taken out of his life by imprisonment a period of something like a year at least. In the case of Bridges v. United States, 346 U.S. 209, 73 S.Ct. 1055, 97 L.Ed. 1557, in which bail was granted, the notice of appeal was filed in this court on July 6, 1950. The case was decided here against Bridges. Certiorari was granted and the final judgment of reversal by the Supreme Court was made in June 1953. 345 U.S. 979, 73 S.Ct. 1130, 97 L.Ed. 1393. It is thus apparent that, as in that case, a similar period could expire for Bryson and nearly three years could be taken out of his life, that is, nearly three-fifths of his sentence.

As will later appear, such a result would be in complete disregard of the principle established by the Supreme Court in the case of Hudson v. Parker, 156 U.S. 277, at page 285, 15 S.Ct. 450, 453, 39 L.Ed. 424:

> "The statutes of the United States have been framed upon the theory that a person accused of crime shall not, until he has been finally adjudged guilty in the court of last resort, be absolutely compelled to undergo imprisonment or punishment, but may be admitted to bail, not only after arrest and before trial, but after conviction, and pending a writ of error."

C. *Bryson's likelihood of flight to escape prosecution is but that of the normal case and the bail should be fixed at the usual norm in appeal cases.*

The record shows that the United States Attorney prosecuting Bryson stated at the time of the fixing of bail during appeal by Judge Mathes that no question of Bryson's likely flight was involved. The attorney then was asking for bail of not less than $30,000. This statement of the prosecutor of absence of Bryson's likelihood to flee is supported by all the facts before Judge Mathes.

It appears that Bryson has no prior record of convictions of any offenses, felony or misdemeanor. For many years of his life he was an American merchant seaman, subject to the jurisdiction of the United States Coast Guard; at no time was he ever charged or convicted of any violation of the rules or regulations of the United States Coast Guard. In all respects whatsoever, save and except for the conviction hereinabove mentioned, Bryson's record of conduct has been and is without blemish.

It further appears that Bryson has a home in San Francisco where he is living with his wife and four children, their ages ranging from six to one. The question of his flight to Mexico was raised and his testimony is that he has today no connections with anyone in Mexico and that he had visited Mexico but once in 1951 to see relatives of a former wife. He further testified that he had never been in Canada and has no connections there.

Coupled with this there are of record in the files of this action statements of a large number of responsible citizens of California to the effect that Bryson was a reliable and dependable person, such elements in his character being required to be considered by the last phrase of 46 (c), "the character of the defendant."

That such a man with such chances of a reversal would flee from his home and wife and children, or flee with them, and for the rest of his life be a fugitive from justice, seems less likely than the usual case with the ordinary appellant in a criminal appeal.

The bail is ordered reduced to $20,000.00.