Ples Elworth RUSSELL, and Roy Russell, Appellants,

v.

UNITED STATES of America, Appellee.

No. 16990.

United States Court of Appeals Ninth Circuit.

March 25, 1961.

Daniel G. Marshall, Los Angeles, Cal., for appellants.

Laughlin E. Waters, U. S. Atty., Robert John Jensen, and William Bryan Osborne, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

Appellants were two of twelve defendants indicted by a fifteen count indictment, charging all twelve defendants with violating 18 U.S.C. § 659, stealing .from interstate shipments of freight and express.[1] . Appellant Ples Elworth Russell was charged in Counts 12 and 15; appellant Roy Russell was charged in Count 15.

Upon arraignment Ples Russell entered a plea of not guilty to Counts 12 and 15; Roy Russell entered a plea of not guilty to Count 15. They were tried by jury and convicted of the counts in which named. Sentences were imposed by the court, under which Roy Russell was committed to the custody of the Attorney General for a period of three years, and Ples Russell was committed to the custody of the Attorney General for a period of five years.

The jurisdiction of the United States District Court rests upon Title 18 U.S.C. §§ 659 and 3231. Jurisdiction of this Court exists pursuant to Title 28 U.S.C. §§ 1291 and 1294.

I.

Appellants first urge insufficiency of the evidence to convict appellant Ples Russell under Count 12, relating to thirteen typewriters.

The evidence against Ples Russell on this count is admittedly weak. At best, when mention was made in his presence of his having acquired a stolen typewriter, he failed to dispute the statement. He was under no obligation to do so, nor to deny it. The government does not even attempt to point out its sufficiency. Yet under the well established rule enunciated as case law in this Circuit and elsewhere, we cannot reverse

---

1. Title 18 U.S.C. § 659, provides in pertinent part as follows:

"Whoever * * * steals, or unlawfully takes, carries away * * * from any * * * platform * * * with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate * * * shipment of freight or express; or

"Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been * * * * stolen; * * *

"Shall in each case be fined not more than $5,000 or imprisoned not more than 10 years, or both; but if the amount or value of such * * * goods or chattels does not exceed $100 he shall be fined not more than $1,000 or imprisoned not more than one year, or both."

as to Count 12, where sufficient evidence exists to convict on Count 15, when the sentence as to both counts has been made to run concurrently. Stein v. United States, 9 Cir., 1959, 263 F.2d 579. See also: Lawn v. United States, 1958, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321; Hirabayashi v. United States, 1943, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774; Sinclair v. United States, 1929, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692; Brooks v. United States, 1925, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699; Pierce v. United States, 1920, 252 U.S. 239, 40 S.Ct. 205, 64 L.Ed. 542; Lemon v. United States, 9 Cir., 1960, 278 F.2d 369; Chin Bick Wah v. United States, 9 Cir., 1957, 245 F.2d 274, certiorari denied 355 U.S. 870, 78 S.Ct. 120, 2 L.Ed.2d 76; Roberts v. United States, 9 Cir., 1956, 239 F.2d 467; Winger v. United States, 9 Cir., 1956, 233 F.2d 440; Jaynes v. United States, 9 Cir., 1955, 224 F.2d 367; Haid v. United States, 9 Cir., 1946, 157 F.2d 630; Fuentes v. United States, 9 Cir., 1960, 283 F.2d 537.

Counsel for appellant urge on us that United States v. Hines, 2 Cir., 1958, 256 F.2d 561, 563, relaxes this rule. Even were we inclined to relax the rule (which we are not), we fail to find here any evidence "that the accused received a longer sentence than otherwise would have been imposed, or that he had been prejudiced by the results of the proceedings." This is the rationale behind United States v. Hines, supra, at page 563. Thus, even were we to assume the rule we rely on (and enunciated repeatedly by the Supreme Court as the cases hereinabove cited indicate) is not a hard and fast rule, but rather a matter of discretion, we are constrained to believe this discretion should rest largely with the trial court, presented to him on motion for a new trial. Such a motion was here made and denied as to both defendants. The trial judge can see in the conduct and demeanor of one who testifies (or even in the conduct and demeanor in the courtroom of defendants who never take the witness stand, as the defendants did not here) a thousand and one matters impossible for a reviewing court to glean from a printed page. In Hines, supra, there existed an erroneous instruction which "was a basic error going to the heart of the case on the second count" (at page 564). No such basic error in instructions existed here. Appellants' counsel makes an impassioned plea attacking the reliability of the principal prosecution witness, himself a defendant, who had entered a plea of guilty to one count, was awaiting sentence, was a convicted robber and thief, was currently serving time, and was "a serious and steady drinker." But nowhere does appellants' counsel seriously attack the evidence of this witness as being insufficient to support the Count 15 conviction with respect to the stolen movie projectors (assuming there was proof of value). No legal basis exists for such an attack—credibility is still a matter for decision by the trier of fact, and under our system of justice must remain so. Incredible chaos is the only alternative. We do not propose to encourage it.

## II.

No motion for severance was made by appellants at any time prior to the verdict of the jury. It is now urged as error that the trial court, sua sponte, did not sever these defendants from the ten others. The only case cited by appellants is Schaffer v. United States, 1960, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed. 2d 921, where a severance was held not essential under Rule 14, Fed.R.Crim.P., 18 U.S.C., to protect defendant's rights, *after* a conspiracy count which had brought all defendants into the one case, had been dismissed. Cf. Rule 8(b), Fed. R.Crim.P. Appellants seek to differentiate their case from Schaffer, supra, on the facts and pleadings, and urge us to adopt the dissenting viewpoint in Schaffer. This we decline to do. Fed.R.Crim. P. 12(b) (2) requires that objection to a joining must be made below. No attempt to show prejudice to appellants arising from the joinder (as required by Fed.R.Crim.P. 14) has been made by appellants here, other than to state "prejudice inevitably resulted." We disagree

with this conclusion, and refuse to overlook or override the plain requirements of the Rules.

### III.

Appellants' third point is that the trial court refused to allow any questions of the defendant Pendergraph (who had plead guilty, but whose sentence had been delayed until after he testified herein) as to his *hopes* for leniency. The court stated he would not bar any inquiry as to any *promises* of leniency made by someone else. Thus this was *not* a case where no cross-examination at all was allowed of the witness, as was the case in Alford v. United States, 1931, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624, relied on by appellants.

Furthermore, the person asking Pendergraph with respect to his "hopes" was counsel for a co-defendant, one Lela Louise Sharpe (Perkins).[2] Counsel for these defendants asked no such questions, nor did he make any offer of proof. Counsel on this appeal for these defendants represented another defendant below. He is now fishing in waters where appellants' counsel refused to throw his line at the time of trial. *Now* it is said that because Pendergraph was a convicted thief and robber, and was serving an unexpired state sentence for theft, with the "warped values he must have, [he] *might* testify that he understood his sentence was dependent upon whether the persons against whom he testified were convicted"!

We can just as well speculate that *if* a question of such a nature had been asked in proper form of the witness by appellants' counsel, or as a preliminary question leading up to the real issue as to whether anything had or had not been told or promised Pendergraph, the trial court *might* have allowed the question. Pendergraph had already been examined by counsel for other defendants as to any promises of awards or immunities made to him. But no such question was asked on behalf of these defendants, no offer of proof made, and apparently neither were thought about until this appeal. They now come too late.

The state cases cited present the theoretical problem, but neither they, nor Alford, supra, Gordon v. United States, 1953, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447, nor Meeks v. United States, 9 Cir., 1947, 163 F.2d 598, are binding on the facts herein disclosed. In Meeks, for example, the offer was in part made to, prove the prior conviction by the witness

---

2. "Question by Mr. McColgan, (counsel for Eules Ezekiel Stanley).

"Q. Did you also meet with the FBI agent who is sitting here at counsel table or any other FBI agent in connection with this particular case? A. I met with Mr. Walsh, yes.

"Q. With any other gentlemen as well? A. Yes.

"Q. Did you meet with any other Federal officers? A. Not to my knowledge.

"Q. Did any of these Federal officers —by that I am including all of these three groups that I have discussed—did any of them promise you any immunity or reward if you cooperated with them? A. Not as of now, no.

"Q. Did they say they would make things easier for you? A. They have never told me anything.

"Q. Nothing at all regarding any time? A. Yes, he did. Mr. Walsh said 'Your time is entirely up to the judge who tries the case.'

It was then stipulated that Van J. Pendergraph, Jr. had entered a plea of guilty to one count of the instant indictment and not guilty to the remaining four counts in which he was named. Mr. Robert J. Hall, counsel for defendant Lela Louise Sharpe then asked Van J. Pendergraph the following questions and received the following answers:

"Q. Now I take it you have been sentenced for your plea of guilty for this case that is now on trial. A. The judge stated that he won't sentence anyone until we were all tried.

"Q. Will you just answer that yes or no, please? A. No.

"Q. You are awaiting sentence; is that correct? A. That's correct.

"Q. Is it your hope that your sentence will be in some way affected by what you say today?

The court sustained objection to this question, stating:

"You may ask him if he has had any promises of any kind but what his hope may be, the court thinks, is immaterial." [R. Tr. 247, 276.]

of a felony. This was a statutory right of impeachment created as provided by the Compiled Laws of Alaska, 1933. Further, the witness had been paroled to the United States Marshal, who had the right to issue orders and regulations to the witness, and determine the amount he was required to contribute for support of his mother; the frequency of such payments; whether his excuses for not reporting were valid, whether his employment was "steady," etc. Again, under Alford, supra, the factual situation there existing made the inquiry "Where do you live?" This calls for a fact answer, and is a proper question. We find no similar factual situation existed herein, nor was there the slightest attempt to prove any such, or any similar, fact.

### IV.

Nor is there merit in the one appellant's position that his two five year concurrent sentences, and in the other appellant's position that his one three year sentence, were excessive, arbitrary, cruel or inhuman. The crime of which each was convicted (at least once) provided for punishment up to ten years. The very distinction between the sentences meted out to the two appellants, and their shortness as compared to the possible maximum, demonstrates that the trial judge was not arbitrary in his judgment, nor cruel, nor inhuman. Depriving a man of his life or liberty is the most distasteful task facing any trial judge. Determining the length of punishment is one of the most difficult. But the differing sentences found here, one being closer to the lower limit and the other being half-way between the lower and the higher limit, disclose a judicial act directly opposed to any excess, arbitrariness, cruelty or inhumanity. Appellant Ples Russell urges that because Roy Russell got three years, the five years given to him was proof of some impropriety. The very consideration carefully given to two convicted felons with respect to whether they should receive similar or different sentences is seized upon by counsel as proof of arbitrary action. Had a distinction not been made by the trial judge

the charge of arbitrary action would have been better supported.

The government cites Bryson v. United States as " * * * F.2d 9 (9th Cir.1959), cert. denied 355 U.S. 817 [78 S.Ct. 20, 2 L.Ed.2d 34]." That denial related to the Bryson cases in 9 Cir., 238 F.2d 657 and 243 F.2d 837. Those cases are not apposite here, nor is Bryson v. United States, 9 Cir., 223 F.2d 775. We presume we were intended to be referred to Bryson v. United States, 9 Cir., 1959, 265 F.2d 9, which is in point, holding that the sentence in the case, being within the limits fixed by the statute, should not be disturbed on appeal by any claim it was cruel or unusual. (Id. at page 13.) In Bryson, the sentence imposed was the maximum permitted by the statute. Here, of course, it was not. In holding that the maximum term of imprisonment so imposed was not cruel or unusual punishment, this court followed a long line of cases establishing the rule in this circuit, and in other jurisdictions, holding that the court of appeals has no jurisdiction to substitute its judgment for that of the trial judge, so long as the sentence is within the period prescribed as maximum punishment. Jackson v. United States, 9 Cir., 1900, 102 F. 473; Freeman v. United States, 9 Cir., 1917, 243 F. 353, 357; Smith v. United States, 9 Cir., 1925, 3 F.2d 1021; Kawakita v. United States, 9 Cir., 1951, 190 F.2d 506; Gurera v. United States, 8 Cir., 1930, 40 F.2d 338, 340; Cochran v. United States, 8 Cir., 1930, 41 F.2d 193; United States v. Rosenberg, 2 Cir., 1952, 195 F.2d 583, 585, 604; United States v. Kapsolis, 7 Cir., 1954, 214 F.2d 677; Brown v. United States, 9 Cir., 1955, 222 F.2d 293.

We are satisfied with the soundness of that rule. We do not find the Yates contempt case (Yates v. United States, 1958, 356 U.S. 363, 78 S.Ct. 766, 2 L.Ed. 2d 837) with its "long history" commented upon by the Supreme Court, controlling. Here we find no reason or excuse for exercising any "supervisory power" we may have "over the administration of justice in the lower federal courts by set-

ting aside the sentence of the District Court." The sentences here, unlike that in Yates, cannot be construed by us as being "severe," (Id., 356 U.S. at page 366, 78 S.Ct. at page 769) or the time already served as "adequate punishment" (Id., 356 U.S. at page 367, 78 S.Ct. at page 769) for the crime for which appellants were convicted. The cases cited still control.

Appellants' point that there was no proof of market value is without merit, in view of the stipulation as to retail value ($164.50 for each of the typewriters and $320.68 for each of the movie projectors), and the fact that Ples Russell allegedly paid $90.00 plus a dress for an article he knew was "pretty warm," if not "hot." We have previously expressed our views on the only guide Congress has seen fit to give the courts. Cf. Torres v. United States, 9 Cir., 1959, 270 F.2d 252, certiorari denied 362 U.S. 921, 80 S.Ct. 675, 4 L.Ed.2d 741.

Finding no error, we affirm.