JOHN H. PETERS, AS PROSECUTING ATTORNEY, CITY AND COUNTY OF HONOLULU, STATE OF HAWAII *v.* RONALD B. JAMIESON, AS JUDGE OF THE CIRCUIT COURT OF THE FIRST CIRCUIT, STATE OF HAWAII, DONALD MAUI KEALOHA, KENNETH K. LONO, ALFRED J. TAI AND JOHN REQUILMAN, JR.

No. 4470.

December 10, 1964.

TSUKIYAMA, C. J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY TSUKIYAMA, C. J.

This is a petition filed by Mr. John H. Peters, Prosecuting Attorney of the City and County of Honolulu, for the issuance by this court of a writ of prohibition prohibiting Judge Ronald B. Jamieson, Judge of the Circuit Court of the First Judicial Circuit, from taking cognizance of the murder case, State of Hawaii v. Kenneth K. Lono, Alfred J. Tai, Donald Maui Kealoha and John Requilman, Jr., Cr. No. 34388, in said Circuit Court. Upon the filing of an amended complaint, a temporary writ of prohibition and an order to show cause issued against said judge.

The petitioner alleges, *inter alia,* that on October 29, 1964, said circuit judge ordered the prosecution and all defense counsel to appear for a conference, at which the prosecution was ordered by said judge, over objection, to produce and give to all parties involved a list of prospective government witnesses and the statement of defendant Kealoha, without authority and contrary to law; that on or about November 13, 1964, said judge, having read Kealoha's statement which was not yet in evidence, caused a memorandum to be distributed among the defense attorneys expressing concern as to the joinder of defendants and questioning whether separate trials were needed; that on November 17, 1964, the date when trial was to commence, petitioner filed a motion to disqualify said judge upon the ground that the judge, for the reasons and facts set forth in the supporting affidavit, had a personal bias and prejudice against the prosecution, which motion the judge summarily denied; and that under and by virtue of such motion and affidavit, said judge was peremptorily disqualified and no longer had jurisdiction of said Criminal No. 34388.

Respondent Judge Jamieson, in response to the instant petition, filed an answer setting forth certain admissions, denials, and affirmative averments in purported justification of the proceedings which occurred at the "pre-trial"

conferences held on October 29, 1964, November 2 and 17, 1964.

On November 24, 1964, this court heard oral argument. The respondent was present but relying upon his written answer, preferred not to argue except to clarify certain points. Without objection, however, he supplemented his written answer by submitting to the court as evidence the circuit court record in Cr. No. 34388 and the transcripts covering the "pre-trial"[1] conferences above mentioned.

At this juncture, it is deemed apropos to set forth and consider some of the pertinent facts involved in the proceedings as revealed by the record and the transcripts.

Three of the defendants, charged with the murder of two police officers, are represented by court-appointed counsel.

On February 20, 1964, defendant Requilman filed a motion for relief from prejudicial joinder which was in effect a motion for severance. This motion was denied by order entered on September 23, 1964.

On February. 28, 1964, defendant Kealoha filed a motion to produce and allow said defendant to make "a photo copy of all statements or reports in the possession of the State which were made by Defendant DONALD MAUI KEALOHA." The motion was granted by order entered on March 6, 1964.

At the outset of the conference held on October 29, 1964, the prosecution requested a continuance of the date of trial, previously set for November 9, 1964, on the ground of administration and internal problems in the prosecutor's office, coupled with the fact that the mental exami-

---

[1] The term "pre-trial" is quoted for the reason that, as evidenced by the transcripts, the trial court repeatedly referred to and held the October 29, November 2 and 17, conferences with all counsel and defendants present, as pre-trials.

It is noted that in this jurisdiction the Rules of Criminal Procedure do not provide for a pre-trial in a criminal case.

nation report of one of the defendants was still pending and that it was not certain whether all the defendants had entered their pleas.[2] The request was not only unopposed but all counsel informed the court that a reasonable delay would not jeopardize their clients' rights. The court, however, denied the request during the same morning and confirmed it in the afternoon when counsel reported that their respective clients desired an early trial.

It is noted that before recessing the morning conference, the court ordered the prosecution to "bring a list of witnesses, bring all the statements and all of the unsigned written statements and/or transcriptions of stenographic notes of oral statements, * * *." Then followed the colloquy set forth below.[3]

Shortly after the conference resumed in the afternoon, the prosecution suggested that some ground rules should be laid before proceeding under Rule 16 and Rule 17(h) of the Hawaii Rules of Criminal Procedure. In that regard, the court said: "I think that at a pretrial, anything that is discoverable or inspectable under Rule 16, upon motion is discoverable and inspectable and copyable, and so on, to the same extent at a pretrial, just by order at a pretrial, without any motion being filed. I don't think that Rule 16 puts any limitation on the scope of pretrial proceedings. So, I don't think Rule 16 really affects us."

---

[2] The record shows that no pleas had theretofore been taken from defendants Lono and Kealoha.

During the afternoon conference, the lack of pleas was confirmed. The court interrupted the conference, convened in regular session, and received pleas of not guilty.

[3] Tr. p. 8, Proceedings of October 29, 1964.

"MR. HAMADA [Prosecutor]: Whatever copies of anything they want, I want them to come in with a subpoena duces tecum.

"THE COURT: The Court can order it and the Court does so order it at this time. That's completely unnecessary. The Prosecuting Attorney is ordered to bring in at 1:30 anything which the defense counsel could obtain by subpoena and would be entitled to obtain by subpoena, so that the whole subpoena problem could be obviated."

While the list of witnesses was being distributed, the prosecution questioned the proceeding as set forth below.[4]

Thereafter, the prosecution again sought "to know the ground rules if we're not following Rule 16." To which the court replied: "I don't think it is possible to anticipate everything that is going to come up in pretrial and it is going to be necessary to make ground rules as we come along. But it does seem that in pretrial anything can be ordered in pretrial without any motion being filed."

In the wake of the foregoing colloquy, which resulted in the court's directing the furnishing by the prosecution of any statement made by any defendant to the other defendants, the prosecution endeavored to express its views on the scope of Rule 16, H.R.Cr.P., but could not finish because of interruption by other counsel. However, the court summed up its view as follows: "I think in a way it does include everything because it says, '. . . obtained from or belonging to the defendant or obtained from others by seizure or by process. . . .' And I should think that if they were obtained from others by seizure or by process, anything obtained from anybody, even voluntarily, would be covered because it wouldn't really matter whether it was obtained by seizure or by process or by just going up and saying, 'please let us have it.' I mean I can't see any magic in seizure or process."

On the day of trial, November 17, 1964, the court held

---

[4] Tr. pp. 22-23, Proceedings of October 29, 1964.

"MR. TANIGAWA [Prosecutor]: Your Honor, the thought has just occurred to me, if we are not proceeding under Rule 16 and not under Rule 17(h), it just occurred to me by what ruling, statute or order is this pretrial conference being held? It seems to me, Your Honor, that this is actually turning out to be a discovery proceeding by the defense attorneys.

"THE COURT: That's part of the purpose of pretrial, not only in civil cases but in criminal cases.

"MR. TANIGAWA: But in going through the Rules of Criminal Procedure, I have not been able to find any rule providing for a pretrial conference. I thought I would like to question this at this time before we proceed any further."

another conference with all counsel involved, with the defendants present. Some days prior thereto, a handwritten memorandum was given by the judge to his clerk to notify the prosecution and all defense counsel to consider the question of physical deletion of parts of Kealoha's statement which referred to Tai, Lono and Requilman and to tell them that he, the judge, was thinking that Kealoha should be tried separately. The handwritten memorandum is attached to both the petition herein and in the respondent judge's answer thereto. Discussion at the conference centered upon the matter of severance. The prosecution argued against severance pointing to the fact that there was no motion before the court and that a motion earlier made for severance had been denied by the court. The court stated that a severance would be ordered on its own motion. The prosecution requested a hearing on the matter and time to prepare, but the court replied: "I'm giving you a chance and anybody who opposes such a separation a chance to be heard right now."

Shortly thereafter, the prosecution filed in open court a motion to disqualify, setting forth in the accompanying affidavit the following:

"That the Honorable Ronald B. Jamieson has a personal bias and prejudice against the State of Hawaii, and the facts and reasons for his belief that such bias and prejudice exist are as follows:

"1. That the Honorable Ronald B. Jamieson has previously ordered a list of prospective government witnesses and the statement of Defendant Donald M. Kealoha to be given to counsel for all defendants, without authority and contrary to the laws of the State of Hawaii;

"2. That the Honorable Ronald B. Jamieson has read a statement of the Defendant Donald M. Kealoha without said statement being admitted into evidence;

"3. That the Honorable Ronald B. Jamieson has given advice to counsel for the defendants by way of a memorandum note to his court clerk; and

"4. That the Honorable Ronald B. Jamieson has prejudged the question of separate trials for the defendants in this cause on the material issues in this cause."

The motion was summarily denied.

The court then stated that he felt duty-bound to separate Kealoha's trial.

At this point, the prosecution informed the court that a petition for a writ of prohibition would be filed in the Supreme Court within a short time and objected to further proceedings for the time being. The court, however, proceeded to discuss the order in which the defendants should be tried. The prosecution urged that defendant Kealoha should be tried first. Over objection, the court ordered defendants Lono, Tai and Requilman to be tried first.

It appears appropriate preliminarily to dispose of two issues raised by the petitioner. The petitioner contends that upon the filing of the affidavit of bias and prejudice on November 17, 1964 the jurisdiction of the presiding judge over the case automatically terminated. According to this contention, no examination of the legal sufficiency of the facts and reasons set forth in the affidavit should be made. Petitioner concedes that this has not been the construction put upon the statute, and that this court has followed the federal rule that "the reasons and facts for the belief the litigant entertains are an essential part of the affidavit, and must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *Berger* v. *United States*, 255 U.S. 22, 33, 34, 41 S.Ct. 230, 65 L.Ed. 481, followed in *Whittemore* v. *Farrington*, 41 Haw. 52, 57.

Petitioner points to the word "sufficient" which pre-

cedes the word "affidavit" in the federal statute[5] but not in ours.[6] However, even before this word was added the federal statute had been so interpreted, as illustrated by *Berger, supra.* We adhere to the rule that the judge to whom an affidavit is presented under section 213-3(b) may pass upon its legal sufficiency, though not upon the truth or falsity of facts alleged. *Whittemore* v. *Farrington, supra; In re Bouslog,* 41 Haw. 270; *Peterson* v. *McKinley,* 45 Haw. 44, 361 P.2d 60; *Glover* v. *Fong,* 39 Haw. 308, 314. In view of this settled rule we undertake no review of the many state cases cited by petitioner.

Petitioner argues that the legislative history of the statute was overlooked in *Whittemore* and contends that the Governor's veto message in 1931 should have been considered, citing H. Jour. 1931, pp. 1569-70. The statute was enacted over the Governor's veto by Act 292, S.L. 1931, but whether the legislature agreed or disagreed with the Governor's construction of the statute cannot be determined. We find in this matter no sound reason for adopting a new construction of the statute. It is noteworthy that the statute had been construed in the *Glover, Whittemore* and *Bouslog* cases before it was reenacted

---

[5] 28 U.S.C.A. 144.

[6] R.L.H. 1955, § 213-3(b), 1963 Supplement (originally enacted as Act 292, S.L. 1931), reads:

"Whenever a party to any suit, action or proceeding, whether at law, in equity, criminal or special proceeding, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one affidavit; and no affidavit shall be filed unless accompanied by a certificate of counsel of record that the affidavit is made in good faith. Any judge may disqualify himself by filing with the clerk of the court of which he is a judge a certificate that he deems himself unable for any reason to preside with absolute impartiality in the pending suit or action."

in the same terms by Act 5, Sp. S.L. 1959, 1st Sess. *Cf.*, *In re Sprinkle and Chow Liquor License,* 40 Haw. 485; *Wright* v. *City and County,* 41 Haw. 603, 608; *Collins* v. *Ako,* 35 Haw. 440.

Before taking up the application of section 213-3(b) in the case before the court we consider another point argued by petitioner, apparently in anticipation of there being some doubt in the matter. On this point we are in agreement with petitioner. We hold that the State may seek disqualification of a judge in a criminal case and is not precluded, merely because the State was the party that instituted the criminal case, from applying to this court for a writ of prohibition if such disqualification is denied. In other words, in criminal cases as in civil cases, the remedy of the statute and the remedy of the writ are not confined to defendants. *State ex rel. Tittmann* v. *Hay,* 40 N.M. 370, 60 P.2d 353, as to the remedy of the statute; *Commonwealth* v. *Howard,* 267 Ky. 287, 102 S.W.2d 18, *State ex rel. McAllister* v. *Slate,* 278 Mo. 570, 214 S.W. 85, and *State ex rel. Spencer* v. *Baker,* 212 Ind. 44, 7 N.E.2d 984, as to the remedy of the writ; Annot., 92 A.L.R. 2d 306; see also the mandamus cases of *State ex rel. Douglas* v. *Superior Court,* 121 Wash. 611, 209 Pac. 1097; *State* v. *Brown,* 8 Okla. Crim. App. 40, 126 Pac. 245; *State ex rel. Brown* v. *Dewell,* 131 Fla. 566, 179 So. 695, Annot., 115 A.L.R. 866; *cf., Peterson* v. *McKinley, supra,* 45 Haw. 44, 361 P.2d 60 and *Kaelemakule* v. *Kaelemakule,* 33 Haw. 725, in each of which prohibition was sought by a libellant.

Due process requires an impartial tribunal. *In re Trask,* 46 Haw. 404, 420, 380 P.2d 751, 760; *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942; *Knapp* v. *Kinsey,* 232 F.2d 458, 465 (6th Cir.). In a criminal case the state is as much entitled to an impartial tribunal as are the defendants. This appears from the cases previ-

256

ously cited upholding the right of the state to seek the disqualification of the presiding judge.

Save in certain instances inapplicable here, the State has no appeal in a criminal case unless the defendants are convicted. R.L.H. 1955, § 212-2. Rulings prejudicial to the State and leading to an acquittal are never reviewed. Under these circumstances it is all the more important that the judge be impartial.

There can be no doubt that prohibition is an available remedy to review the trial judge's ruling refusing to disqualify himself,[7] unless there are reasons why the writ should be withheld. As seen from the reasoning of the court in *Peterson* v. *McKinley, supra,* it is in the area where an appeal lies to review the trial judge's ruling refusing to disqualify himself that this court encounters the question whether, in the exercise of a sound discretion, prohibition should not be allowed as a remedy to oust the trial judge. We are satisfied that in a criminal case, where the writ is sought by the State, the turning point is whether grounds of disqualification have been established. As stated in *Commonwealth* v. *Howard, supra,* 267 Ky. 287, 102 S.W.2d 18:

"In the event there should be a verdict of acquittal, the Commonwealth is without adequate remedy if the trial judge has erroneously refused to vacate the bench. It is this inability of the Commonwealth to have the error corrected on appeal which authorizes this court in an original action to review such an order, and, if deemed proper, to issue a writ of prohibition restraining the judge from sitting in the case."

Disqualification for bias or prejudice does not neces-

[7] R.L.H. 1955, § 236-10 provides that the grounds of prohibition are "that the cognizance of such cause does not belong to such court, or that the cause or some collateral matter arising therein is beyond its jurisdiction, *or that it is not competent to decide it.*" (Emphasis added.)

sarily rest on the filing of an affidavit of bias or prejudice. It may appear from the record itself. *Knapp* v. *Kinsey, supra; Whitaker* v. *McLean,* 118 F.2d 596 (D. C. Cir.). Indeed, any motion to disqualify based on matters of record must find its support in the record. Revised Laws of Hawaii 1955, section 213-3(b) was never intended to permit a party to file an affidavit setting out as incontrovertible facts matters which appear from the record itself. *Peterson* v. *McKinley, supra,* 45 Haw. 44, 47, 361 P.2d 60, 62. Hence, in the present case, whether grounds of disqualification have been established must be gleaned from the record. We hold that in a proper case a writ of prohibition will lie to compel a trial judge to recuse himself because of bias or prejudice which appears from the record, where as here the case is one in which the question of disqualification cannot otherwise be reviewed. Hence, we have deemed it necessary to review the record and to depict the pertinent portions of the proceedings as set forth earlier in this opinion.

We now reach the principal issue as to the respondent judge's disqualification and consequent legal incompetency to continue to preside over the temporarily interrupted trial of Cr. No. 34388.

It is the generally recognized rule as petitioner concedes that errors in rulings by the trial judge in the course of a judicial proceeding cannot be made the basis upon which bias or prejudice is predicable. It is also generally established that prohibition does not lie in an appellate court where such errors may be reviewed on appeal. In *Peterson* v. *McKinley,* 45 Haw. 44, 361 P.2d 60, this court held that the remarks, rulings or actions of the trial judge and the manner in which the judge is conducting the proceedings before him do not form the basis for prohibition as a remedy to oust him for bias or prejudice "if an appeal would lie ultimately though not

immediately." Indeed we did state in that case: "We are satisfied that the writ does not lie as of right in such a case, the order ultimately being viewable on appeal. Availability of the writ is a matter within the discretion of this court, which will not issue the writ unless there are 'such "special circumstances" as to make it a "rare and exceptional case." ' "

As seen, the prosecution normally cannot appeal a criminal case in behalf of the state. If it fails to prevail in the trial court, it is forever foreclosed from seeking appellate review of erroneous rulings, remarks and actions of the trial court through the established method of appeal. In the interest of fair and impartial trial in a criminal case, there are situations in which the extraordinary remedy of prohibtion warrantably may be invoked. As the court said in *Commonwealth* v. *Murphy,* 295 Ky. 466, 475, 174 S.W. 2d 681, 685: "* * * where the commonwealth makes an application for such a writ to prohibit a Judge from trying a criminal prosecution, we issue it upon a sufficient showing because if the judgment should be adverse to the commonwealth and the defendant be found not guilty, there is no remedy."

We make no inference that merely because there is no appeal in a criminal case, the prosecution may resort to prohibition to disqualify the trial judge for making rulings unfavorable to it. There must perforce be circumstances on the record which make the case a rare and exceptional one. *Peterson* v. *McKinley, supra.* To be sure, the admeasurement of a case as to whether it is rare and exceptional, being a matter of degree, is not free from difficulty. That the prosecution has no appeal, though not controlling, is one factor which may be considered together with the entire record.

For better and clearer understanding, we have related chronologically some of the pertinent highlights in the

forepart of this opinion as they appear on the record.

It is contended by the petitioner, and the record unmistakably reveals, that the respondent judge has held preliminary conferences, with all the formalities sanctioned by the rules applicable only to pre-trials in a civil case, and made directions and orders in disregard of the procedural rules governing the trial of a criminal case; that the respondent called for pre-trial hearings in Cr. No. 34388 on three separate dates before the trial, though the prosecution questioned such authority; that the respondent manifested bias and prejudice against the prosecution by distributing a handwritten memorandum to all defense counsel containing suggestive matters; that the respondent ignored the clear import of Rule 16, H.R.Cr.P., which limits the right of discovery to certain tangible objects obtained from the defendant or to items obtained from others by seizure or process, and ordered the prosecution to produce and distribute to the defendants a list of all prospective government witnesses; that the respondent ordered, without authority, the prosecution to distribute to all the defendants copies of defendant Kealoha's statement; and that in the course of discussing the matter of severance, the respondent prejudged the question of admissibility of Kealoha's statement.

We do not find it necessary to labor each of the foregoing contentions. The entire factual situation can be gleaned from the record of the trial court and the transcripts. At the very inception of the series of conferences, the prosecution's request for a reasonable delay on account of administrative and reassignment problems within the department was denied, despite the fact that defense counsel initially informed the court that a reasonable delay would not be prejudicial. Then followed considerable confusion in the matter of the application of Rules 16 and 17, H.R.Cr.P. Notwithstanding the prosecution's

protestation as to the authority for so doing, the trial judge proceeded to lay down his own rule and ordered the prosecution to furnish to defense counsel copies of the list of prospective witnesses (82), and "all the statements and all of the unsigned written statements and/or transcriptions of stenographic notes of oral statements." When the prosecution stated that if the defendants wanted copies of anything, they should come in with a subpoena duces tecum, the court replied: "The Court can order it and the Court does so order it at this time."

Moreover, when the court's attention was referred by the prosecution to the absence of any motion for discovery and inspection[8] under Rules 16 and 17(h)(1), the trial judge stated: "* * * it does seem that in pretrial anything can be ordered in pretrial without any motion being filed."

Further expressing his view, the trial judge said: "I think in a way it does include everything because it says, '. . . obtained from or belonging to the defendant or obtained from others by seizure or by process. . . .' And I should think that if they were obtained from others by seizure or by process, anything obtained from anybody, even voluntarily, would be covered because it wouldn't

---

[8] Rule 16, H.R.Cr.P. reads as follows:

"Discovery and Inspection. *Upon motion of a defendant* at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just." (Emphasis added.)

Rule 17(h)(1), H.R.Cr.P. reads as follows:

"(1) When Subject to Production. *No statement or report* in the possession of the State which was made by a government witness or prospective government witness (other than the defendant) to an agent of the government *shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial.*" (Emphasis added.)

really matter whether it was obtained by seizure or by process or by just going up and saying, 'please let us have it.' I mean I can't see any magic in seizure or process."

On the morning of November 17, 1964, the date set for trial, a final conference was held with counsel and all the defendants present. Referring to the handwritten memorandum he had previously distributed, the trial judge asked the prosecution whether defendant Kealoha's statement would be offered in evidence. Upon receiving an affirmative reply, he then expressed his views on the matter of severance. The prosecution protested that there was no motion, to which the judge replied that he was seriously considering separate trials. The colloquy set forth below then ensued.[9] The prosecution continued to object to any severance and pointed out that the matter had been earlier settled, obviously referring to a written motion filed by defendant Requilman on February 20, 1964, for severance of his own trial from his codefendants, which motion had, after hearing, been denied by the court by written order entered on September 23, 1964.

Observing that there would be no change in the state of the record, the prosecution then filed in open court the motion and affidavit in question to disqualify. Thereupon, the court said: "Let the motion be filed in open court at this time, and copies distributed to the defendants. Well, the motion to disqualify is denied. I don't think it's necessary to have any argument or further hearing on it.

---

[9] Page 10, Tr. Conference of November 17, 1964.

"MR. PETERS: Well, if the court please, does the court intend then to accept motions for that purpose? I'd like to keep the record straight.

"THE COURT: No. The court would do it just on its own motion pursuant to its inherent powers as the court to exercise whatever control or take whatever action is necessary in the interest of justice and a fair trial.

"MR. PETERS: Without any hearing on the motion, Your Honor?

"THE COURT: I'm giving you a chance and anybody who opposes such a separation a chance to be heard right now.

"MR. PETERS: Well, isn't this short notice, Your Honor? We're entitled, if the Court please, to a written motion and 48 hour notice."

The court has read the affidavit and the motion is denied."

After a short recess, the prosecution informed the court that a petition for a writ of prohibition would be filed and that its preparation would be completed in 15 to 20 minutes. The court nevertheless proceeded to take up the matter pertaining to the order of trial after severance. The prosecution requested the court to try the Kealoha case first, if there must be a severance. The court, however, ruled: "And it is ordered that the trial of Defendants Requilman, Tai and Lono proceed and that the trial of Defendant Kealoha be deferred until some time which will be set in the future for a trial date which will be after the completion of the trial of Messrs. Requilman, Tai and Lono. And I think that would prevent the Kealoha statement getting involved with the Tai, Lono, Requilman trial in the newspapers, and that's the reason for the order and that ought to be sufficient reason."[10]

In the administration of justice by a court of law, no principle is better recognized as absolutely essential than that every case, be it criminal or civil, and the parties involved therein are entitled to the "cold neutrality of an impartial judge." The right of litigants to a fair trial must be scrupulously guarded. Due to human limitation and imperfection, even judges, lest they are on constant guard, are susceptible to the manifestation of predilection by their conduct or remarks and thus incur the suspicion that they are biased. Particularly in a criminal case, it is imperative that a judicial tribunal accord to the prosecution a treatment no less fair and impartial than that to which the defense is entitled when it is common knowledge that the former is without right to receive an appellate review. In the words of Mr. Justice Cardozo, *Snyder* v.

---

[10] This ruling cannot be construed as a reconsideration of the court's order entered on September 23, 1964, denying the motion which had been made by defendant Requilman for a separate trial of his own case. On the record, that order still stands.

*Massachusetts,* 291 U.S. 97, 122, 54 S.Ct. 330, 78 L.Ed. 674, "But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true."

As we have seen, and we repeat, that disqualification may appear on the record and does not necessarily rest on the filing of an affidavit of bias or prejudice. After a careful examination of the record here and in the light of the cumulus of comments, directions, rulings and orders made by the respondent judge in the course of the proceedings at the preliminary conferences, which he equated with civil pre-trial hearings not provided for or contemplated by the Hawaii Rules of Criminal Procedure, we are impelled to the conclusion that the rulings and orders were not merely adverse and prejudicial to the prosecution but made in utter disregard of established rules. What appeared to be reasonable requests of the prosecution for continuance were rejected. The distribution of the handwritten memorandum, the comments on the status of defendant Kealoha's statement in the presence of all the defendants, the summary denial of the motion to disqualify without permitting argument thereon, the order of severance without motion or due hearing, and the peremptory setting, over the prosecution's protestation and without due hearing, of the order in which Kealoha and the other defendants are to be tried, have all combined to prejudice the prosecution and to raise a fair presumption that the respondent judge is incapable of according the prosecution a fair trial.

Perhaps the judge, in light of the gravity of the alleged crime for which the defendants are to be tried, was endeavoring to shoot his bolt in demonstrating that the defendants were receiving meticulous consideration in point of fairness and justice. The anxiety and concern

of a judge to accord to the accused an absolutely fair and just trial is indeed commendable. But in so doing, he should be equally ready and alert to protect the rights of the accuser. Any one-sided bent would be an injustice not only to either of the parties but to society itself.

We adhere to the rule that mere erroneous or adverse rulings by the trial judge do not spell bias or prejudice and cannot be made the basis for disqualification. But when other factors such as appear on the record of the instant case are collectively considered together with such rulings, we do not hesitate to hold that they do form a basis upon which bias or prejudice can be predicated. Such was the situation which obtained in *State ex rel. McAllister* v. *Slate,* 278 Mo. 570, 214 S.W. 85. Said the court in that case: "We repeat, for emphasis's sake, that nothing is better settled in law than that mere error of the kind mentioned, when standing alone, disassociated from other facts and circumstances, does not afford the least evidence of bias or prejudice." Coupling other existing factors with erroneous rulings of law, the court found bias and prejudice and issued a permanent writ.

We are satisfied from the record that Judge Jamieson has generally conducted the proceedings with dignity. His probity is not questioned. We are, however, constrained to point out that in his overzealousness to safeguard the rights and interests of the accused in this case, he has overreached himself and unwittingly prejudiced the prosecution.

Because it squarely fits the circumstances here, we further quote from *State ex rel. McAllister* v. *Slate, supra:*

"* * * Prejudice is the ultimate fact; its origin is wholly immaterial. Likewise it is immaterial whether it was warranted or unwarranted, justified by the facts or not justified thereby. If in fact bias exists, to an extent which will preclude a fair, unprej-

udiced, and unbiased weighing of the law and the facts on the state's side upon a trial * * *, then prejudice is present to a degree forbidden to a judge by both the common law [citation] and the statute [citation]."

The writ of prohibition, accordingly, will be made permanent. It is also ordered that all rulings and actions made or taken by the respondent judge in Cr. No. 34388 subsequent to the denial of the motion to disqualify shall be and they hereby are set aside and declared to be without effect. The assigned judge shall enter an order discharging the jury panel or panels thus far summoned in said Cr. No. 34388 and proceed, if required, to consider the question of severance, and if severance be granted, the order of trial.

*T. Irving Chang* and *Richard T. Ishida,* Deputy Prosecuting Attorneys, City and County of Honolulu (*John H. Peters,* Prosecuting Attorney), for petitioner.

*Judge Ronald B. Jamieson,* respondent, pro se.

*J. Russell Cades, William L. Fleming* and *William M. Swope* for respondent Donald Maui Kealoha.

*Nathaniel Felzer* for respondent Kenneth K. Lono.

*J. Garner Anthony, Frank D. Padgett* and *Thomas M. Waddoups* for respondent Alfred J. Tai.

*Donald H. C. Low* and *Robert K. Richardson* for respondent John Requilman, Jr.

---

CONCURRING OPINION OF WIRTZ, J.

In joining in the opinion of the Court, I wish, however, to stress that the state as well as the defendant has rights in the manner a criminal case is tried. In government under law the state, in order to survive, must have,

within the framework of its organic law, an effective means of enforcing the rules of conduct laid down for the members of its society for the protection of the community as a whole.

In reviewing the denial of the motion to disqualify, the sole question presented is whether the record supports the grounds of disqualification asserted in the motion, as shown by the affidavit, and the sufficiency of those grounds, in predicating "personal bias and prejudice" to the trial judge.

While mere errors of law in rulings made during the proceedings do not spell out "personal bias and prejudice" (*Peterson* v. *McKinley,* 45 Haw. 44, 361 P.2d 60), still the manner in which they were made and the surrounding circumstances can indicate such bias and prejudice. *State ex rel. McAllister* v. *Slate,* 278 Mo. 570, 214 S.W. 85. Here, the pretrial proceedings (not contemplated by rule or statute) which equated discovery in criminal proceedings with that in civil matters without the requirement of motion and in disregard of Rules 16 and 17, H.R.Cr.P. (providing for discovery in criminal cases) pointed to an utter disregard of criminal procedure in this jurisdiction, as ordained by statute and rule. The cooperative acquiescence of the prosecution, under protest of the lack of the trial judge's authority to so proceed, compounded the undue consideration of the individual rights of the defendants in derogation to the collective rights of the community. This led to a final series of events which rendered the atmosphere intolerable for a fair trial, to which the public, as well as the defendants, were entitled. *State ex rel. McAllister* v. *Slate, supra; State ex rel. Douglas* v. *Superior Court,* 121 Wash. 611, 209 Pac. 1097; *State* v. *Brown,* 8 Okla. Cr. 40, 126 Pac. 405; *State ex rel. Mickle* v. *Rowe,* 100 Fla. 1382, 131 So. 331. These were the issuance of a memorandum by the judge which in

effect invited motions for separate trials and to which there was no response.[1] Thereupon, on the date set for trial and without affording the prosecution a requested hearing, the judge *sua sponte*[2] ordered that defendants Lono, Tai and Requilman be tried separately and, without any consideration of the prosecution's rights in the matter, in advance of the trial of the defendant Kealoha. The motion to disqualify, presented after the intent to grant a severance became evident but before the order, had been summarily denied *eo instante*. Although informed that a writ of prohibition to this court was being prepared for immediate presentation, the trial judge, nonetheless, proceeded with the selection of a jury for the trial of defendants Lono, Tai and Requilman. From this, the conclusion seems inescapable that the trial judge had, although not consciously, manifested a bias and prejudice toward the state and in favor of the defendants so as to render a fair trial impossible insofar as the community was concerned.

It is regrettable that this matter has reached this stage as the atmosphere created, even if considered without regard to fault on the part of the judge or the prosecutor, amplified as it was by the attendant publicity, was such that it was "advisable for a judge not technically disqualified to withdraw *sua sponte*." *Re H. Bouslog*, 41 Haw. 270, 283. Under the present circumstances, although the judge may conscientiously feel that he is not disqualified, I feel that this particular record discloses sufficient, apart from mere rulings of law, to indicate the requisite bias and prejudice on the part of the trial judge.

[1] There had been filed in February of 1964 a motion for severance on behalf of defendant Requilman which had been denied in September of 1964.

[2] This cannot be considered as a reconsideration of the previously denied Requilman motion as that requested a separate trial apart from any of the other defendants.

Overzealousness in safeguarding the rights of individuals charged with crime, albeit be they constitutional rights, can effectively frustrate the state in its rightful effort to exact just punishment from the transgressors of its laws to the prejudice and detriment of society. As so aptly stated by Justice Brandeis in *New State Ice Co.* v. *Liebmann*, 285 U.S. 262, 311: "* * * we must be ever on our guard, lest we erect our prejudices into legal principles."

I join in making the writ permanent.

---

#### DISSENTING OPINION OF LEWIS, J., WITH WHOM CASSIDY, J., JOINS.

I respectfully dissent from the court's holding that the record herein shows a disqualifying bias or prejudice. As the record shows:

On February 20, defendant Requilman filed a motion for relief from prejudicial joinder, under H. R. Cr. P., Rule 14.

On February 28, the defendant Kealoha filed a motion for production and inspection of all statements in the possession of the State which were made by him. After argument on March 4 this motion was granted by order filed on March 6. According to the minutes of March 4 the Prosecutor had no objections to the granting of this motion.

On September 14 the court filed a decision denying defendant Requilman's motion for severance.[1] An order in accordance with this decision was filed a week later.

---

[1] The motion had been heard on March 5, and at the suggestion of the Prosecutor had been held in abeyance awaiting ascertainment as to whether other defendants were going to file similar motions. All defendants were notified of the hearing on this motion, which was held on July 28.

On September 16 an order was entered setting the case for trial, to commence on Monday, November 9, at 9:00 A.M.[2]

On October 29, apparently on volition and direction of the court, counsel for all parties appeared and the matter of proceeding with the trial was discussed. The hearing was continued until the afternoon, but prior to recessing the court ordered the prosecution to bring in, at the afternoon session, a list of witnesses and "all the statements and all of the unsigned written statements and/or transcriptions of stenographic notes of oral statements." Previously, counsel for defendant Lono had said he was ready for trial provided "that we have further information we are entitled to: a copy of the list of all witnesses, a copy of written statements or unwritten statements or copies of so-called statements not signed * * *."

The prosecuting attorney indicated that the State wanted any production it was required to make to come under a subpoena duces tecum. The court, however, stated that was completely unnecessary and that the court could order, and at that time did order the production, stating that, "The Prosecuting Attorney is ordered to bring in at 1:30 anything which the defense counsel could obtain by subpoena and would be entitled to obtain by subpoena, so that the whole subpoena problem could be obviated."

In the afternoon session, when one of the prosecuting attorneys expressed the desire or advisability that "before the pretrial conference actually begins, some ground rules should be laid and agreed on," the court, in the ensuing colloquy, stated that "at a pretrial, anything that is discoverable or inspectable under Rule 16, upon motion is

---

[2] Because of the pendency of another trial in the respondent judge's division the trial in the murder case under consideration was eventually set to commence at 9:00 A.M., Tuesday, November 17, 1964.

discoverable and inspectable and copyable, and so on, to the same extent at a pretrial, just by order at a pretrial, without any motion being filed." The court further stated: "I don't think that Rule 16 puts any limitation on the scope of pretrial proceedings."

At one point, counsel for defendant Tai suggested that the Prosecutor state what portion of "discoverable items" he was "unwilling to produce." The reply made by a deputy prosecutor was: "There is no such thing as unwillingness." Thereafter, one of the prosecutors addressed the court as follows:

"Your Honor, the thought has just occurred to me, if we are not proceeding under Rule 16 and not under Rule 17(h), it just occurred to me by what ruling, statute or order is this pretrial conference being held? It seems to me, Your Honor, that this is actually turning out to be a discovery proceeding by the defense attorneys."

The court replied:

"That's part of the purpose of pretrial, not only in civil cases but in criminal cases."

Shortly thereafter when the prosecution again pressed "to know the ground rules if we're not following Rule 16," the court replied: "I don't think it is possible to anticipate everything that is going to come up in pretrial and it is going to be necessary to make ground rules as we come along. But it does seem that in pretrial anything can be ordered in pretrial without any motion being filed." One of the prosecutors then stated:

"I'm not saying that I want a motion. We are by-passing the motion in Rule 16 wherein the order shall specify the time, place and manner of inspection and such terms and conditions as are just. That is what we are trying to follow."

The court replied:

"I suggest, rather than getting into a theoretical discussion, we just go ahead and meet the problems as they come. We have covered the matter of witnesses very well, apparently. And the next thing to do would be to go on to the matter of statements. That may be taken care of also."[3]

Over objection, the court ordered that the prosecution furnish any statement made by any defendant to the other three defendants. The court's ruling was based on "the fact that these four defendants are in the trial together * * * the statements should be available to all counsel for the orderly conduct of the trial." This was the position which had been taken by counsel for the three defendants other than Kealoha.[4]

Subsequently the court, at the request of one of the defense counsel, took up the matter of physical evidence. The prosecution referred to the provisions of H. R. Cr. P., Rule 16. The court expressed the view that:

"I think in a way it does include everything because it says, '. . . obtained from or belonging to the defendant or obtained from others by seizure or by process . . .' And I should think that if they were obtained from others by seizure or by process, anything obtained from anybody, even voluntarily, would be covered because it wouldn't really matter whether it was obtained by seizure or by process or by just going up and saying, 'please let us have it.' I mean I can't see any magic in seizure or process."

---

[3] In the ensuing colloquy, the court referred to "a lot of discussion at the recent Judges' seminar on criminal pretrial," and to "a California judge there who told us about how much use of it is being made in California." It is to be noted, however, that California has developed its discovery practice by case law and has not adopted the federal rules of criminal procedure. See Louisell, *Criminal Discovery: Dilemma Real or Apparent?*, 49 Calif. L. Rev. 56; *Jones* v. *Superior Court*, 58 Cal. 2d 56, 372 P.2d 919.

[4] As seen, defendant Kealoha had previously made a motion for, and been granted, the production of statements made by him.

A further pre-trial conference was had commencing shortly after 9:00 A.M. on November 17. A few days prior to that, the respondent judge had given his clerk a written memorandum directing him to notify the public prosecutors and counsel for the defendants to look "into the problem of the six page statement of Mr. Kealoha" and to consider the question of whether physical deletion of references to other defendants could be done without prejudice to the defendants including Kealoha. The memorandum also instructed the clerk to "tell the attorneys that I am thinking that, because of his statement, it may well be that Kealoha should be tried separately from Tai, Lono and Requilman."

At the conference the court pointed out that Kealoha's statement incriminated at least two other defendants and that it occurred to the court it would be difficult to physically delete the references to the other defendants and have the statement meaningful. The court then made inquiry of the prosecution on whether it had intention of offering the statement and was advised that it did. Counsel for all defendants expressed the view that the trial of Kealoha should be severed. The court then asked if anyone else wished to state argument against separate trial of Kealoha. The prosecution pointed out that no motion was before the court and if defendants wanted a separate trial "they should file their motions and that can be handled in the proper order." The court stated it would do it on its own motion. Upon being asked by the prosecution, "Without any hearing on the motion?", the court replied, "I'm giving you a chance and anybody who opposes such a separation a chance to be heard right now." The prosecution protested that the notice was too short. The court then asked if it had any more to say. The Prosecutor informed the court he had a motion to file, which was filed in open court. This was the motion

to disqualify. Subsequently, the court ordered that the trial of Kealoha be severed from the other three defendants. Kealoha's counsel made inquiry of the order of the trials, and the court stated, without soliciting the prosecution's position on the matter, "I think that the Kealoha trial should come second." The prosecution objected and requested Kealoha be tried first. The court confirmed its prior ruling.

The asserted grounds of disqualification boil down to the following:

a. That the respondent judge ordered a list of prospective government witnesses to be given to defendants.

b. That the respondent judge ordered that the statement of defendant Kealoha be given to *all* the defendants.

c. That the respondent judge, after reading the statement of defendant Kealoha, which had not been admitted into evidence, *sua sponte* ordered that defendants Lono, Tai and Requilman be tried separately from defendant Kealoha, after preparing a memorandum to counsel in such terms as to indicate prejudgment of the question of severance and give advice to counsel concerning the right of their clients to a severance.

On the first point I think the court erred. At the same time it must be noted that the prosecution raised solely the objection that there ought to be a subpoena duces tecum, which was supplemented by a request for the "ground rules" under Rules 16 and 17. The Prosecutor made no specific objection that the defendants were not entitled to a list of witnesses. However, there was a disregard of orderly procedure on the part of the court.

Had orderly procedure been followed and a subpoena duces tecum issued,[5] followed by a motion to quash, there

---

[5] See H. R. Cr. P., Rule 17(c).

would have been an opportunity, in connection with this and other points arising under Rules 16 and 17, for argument of the significance and application of such cases as *Bowman Dairy Co.* v. *United States,* 341 U.S. 214; *United States* v. *Murray,* 297 F.2d 812, 820-22 (2d Cir.) ; *Fryer* v. *United States,* 207 F.2d 134 (D.C. Cir.), which is discussed in *United States* v. *Murray* and is to be considered with the later case of *Jencks* v. *United States,* 353 U.S. 657; *Peek* v. *United States,* 321 F.2d 934, 939-42 (9th Cir.) ; and numerous other cases mostly at the trial court level.[6] A variety of views is expressed in the cases, and it is not my purpose to resolve the questions therein discussed. To do that would require briefing of and argument on such questions. It is sufficient to note that the respondent judge manifested a disregard of the rules of court governing orderly procedure which perhaps might have been controlled by this court by an appropriate writ had application been made therefor. Compare, *Oyama* v. *Stuart,* 22 Haw. 693, and *Fong* v. *Sapienza,* 39 Haw. 79, with *Application of Akana,* 42 Haw. 415. Of particular interest is the statement of the Supreme Court in *La Buy* v. *Howes Leather Co.,* 352 U.S. 249, 256:

"* * * As this Court pointed out in *Los Angeles Brush Corp.* v. *James,* 272 U.S. 701, 706 (1927) : '. . . [W]here the subject concerns the enforcement of the . . . [r]ules which by law it is the duty of this Court to formulate and put in force,' mandamus should issue to prevent such action thereunder so palpably im-

---

[6] Some of these cases specifically hold that a defendant is not entitled under the rules, *i. e.,* in the absence of a statute, to a list of government witnesses, *e. g., Dean* v. *United States,* 265 F.2d 544 (8th Cir.) ; *United States* v. *Lavery,* 161 F. Supp. 283, 287 (M.D. Pa.) ; *United States* v. *Brennan,* 134 F. Supp. 42, 53 (D.C. Minn.) ; *United States* v. *Palermo,* 21 F.R.D. 11 (S.D.N.Y.) ; *United States* v. *Haug,* 21 F.R.D. 22, 27 (N.D. Ohio) ; *United States* v. *Bryson,* 16 F.R.D. 431, 436 (N.D. Cal.) ; *but see, United States* v. *Frank,* 23 F.R.D. 145 (D.D.C.).

Hawaii has no statute such as 18 U.S.C.A. 3432, which provides for the furnishing of a list of witnesses in capital cases.

proper as to place it beyond the scope of the rule invoked. As was said there at page 707, were the Court '... to find that the rules have been practically nullified by a district judge ... it would not hesitate to restrain [him]. ...' "

Be that as it may, the petitioner is not before us for the purpose of enforcing adherence to the rules of court. The record reveals that the prosecution's efforts in that direction were hesitant and lacking in forcefulness. Possibly the prosecution was taken by surprise. Even so, it should have stated its dilemma and asked for an adjournment of the conference of October 29 to enable it to research the law and better present its position. The record shows that while protests were made by the prosecution from time to time as to the amorphous nature of the proceedings and the necessity of following the rules, these protests were coupled with a hesitance as to insistence on such objections, even acquiescence at times in the court's rulings, which substantially undermines the charges now made. So much so that I am unwilling to say that the record demonstrates anything other than judicial error. As was stated in *Knapp* v. *Kinsey*, 232 F.2d 458, 466 (6th Cir.):

"The bias or prejudice which will disqualify a judge must be 'personal' bias or prejudice as distinguished from a judicial one. Craven v. United States, 1 Cir., 22 F.2d 605, 607-608, certiorari denied 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739. It is not sufficient if the alleged bias or prejudice arises out of the judge's background and associations rather than his appraisal of the complaining party personally. Price v. Johnston, 9 Cir., 125 F.2d 806, 811; Eisler v. United States, 83 U.S. App. D.C. 315, 170 F.2d 273, 278. Nor is it sufficient that the alleged bias or prejudice arises from the judge's view of the law, which may have been

expressed by him in some prior case. Loew's, Inc., v. Cole, 9 Cir., 185 F.2d 641, 646; Ferrari v. United States, 9 Cir., 169 F.2d 353. * * * Adverse rulings during the course of the proceedings are not by themselves sufficient to establish bias and prejudice. Ex parte American Steel Barrel Co., 230 U.S. 35, 44, 33 S.Ct. 1007, 57 L.Ed. 1379; Refior v. Lansing Drop Forge Co., 6 Cir., 124 F.2d 440, 444; Littleton v. DeLashmutt, 4 Cir., 188 F.2d 973, 975, certiorari denied 342 U.S. 897, 72 S.Ct. 229, 96 L.Ed. 672; Beecher v. Federal Land Bank, 9 Cir., 153 F.2d 987, 988, certiorari denied 328 U.S. 871, 66 S.Ct. 1364, 90 L.Ed. 1641, rehearing denied 329 U.S. 819, 67 S.Ct. 28, 91 L.Ed. 697. See also In re J. P. Linahan, Inc., 2 Cir., 138 F.2d 650."

The order that defendant Kealoha's statement be given to *all* the defendants, the second point above listed, was made over objection. At the time, it was assumed that all four defendants would be tried together. The ruling of the respondent judge that accordingly all four were entitled to see Kealoha's statement may be questioned. See, for example, *United States* v. *Abrams,* 29 F.R.D. 178, 183 (S.D.N.Y.). But in view of the fact that defendant Kealoha already had obtained these statements the matter was not serious except in connection with the third point, next considered.

At the argument it appeared that petitioner was chiefly incensed over the court's *sua sponte* ordering of a severance. But as stated in *Schaffer* v. *United States,* 362 U.S. 511, 516, "The trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." I can see no reason why the respondent judge should wait until defendant Kealoha's statement was offered in evidence before determining that there was no satisfactory way to admit the statement into evidence

without prejudice to other defendants, if that was his view. Whether the question of severance was rightly or wrongly determined we cannot say. It does seem clear, however, that the petitioner is complaining of respondent judge's assumption of a duty of acting under Rule 14 *sua sponte,* a duty which, for example, a federal judge assumed in *United States* v. *Guterma,* 181 F. Supp. 195 (E.D.N.Y.), and an appellant asserted without the Court of Appeals questioning the existence of such duty in *Russell* v. *United States,* 288 F.2d 520 (9th Cir.). A charge of bias and prejudice cannot be based on such a shaky foundation. The reading by the respondent judge of defendant Kealoha's statement, the memorandum to counsel, and the so-called "prejudgment," were all part of the same *sua sponte* action. However, the hearing on this question of severance was held at the very hour when the trial was to have commenced, and the petitioner's feeling that he was being given short shrift is not without justification and is easily understood. And this is particularly true in respect of the order of trial after the severance had been ordered. The respondent judge's handling of the matter did not give the Prosecutor the consideration he should have been accorded in determining whether Kealoha or his three codefendants should be tried first. But in my opinion such conduct cannot be characterized as "bias" or "prejudice" in any sense pertinent here.

I would dissolve the temporary writ and dismiss the petition.